# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JULY SESSION, 1999

**FILED**

October 13, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9809-CR-00362** |
| | ) | |
| Appellee, | ) | |
| | ) | **DAVIDSON COUNTY** |
| **V.** | ) | |
| | ) | |
| | ) | **HON. J. RANDALL WYATT, JR.** |
| **DONALD K. MOORE, JR.** | ) | |
| | ) | |
| Appellant. | ) | **(SECOND DEGREE MURDER)** |

**FOR THE APPELLANT:**                    **FOR THE APPELLEE:**

**MONTE D. WATKINS**                      **PAUL G. SUMMERS**
1510 Parkway Towers                        Attorney General & Reporter
Nashville, TN 37219

**LUCIAN D. GEISE**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**VICTOR S. JOHNSON, III**
District Attorney General

**KATRIN NOVAK MILLER**
Assistant District Attorney General

**DERRICK SCRECHEN**
Assistant District Attorney General
Washington Square - Suite 500
222 Second Avenue North
Nashville, TN 37201-1649

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

On July 29, 1996, the Davidson County Grand Jury indicted Defendant Donald K. Moore, Jr., for one count of first degree murder and one count of felony murder. Following a jury trial on May 11–12, 1998, Defendant was convicted of one count of second degree murder. After a sentencing hearing on June 15, 1998, the trial court sentenced Defendant as a Range I standard offender to a term of twenty-one years in the Tennessee Department of Correction. In addition, the trial court ordered this sentence to run consecutively to sentences that had previously been imposed in another case. Defendant challenges both his conviction and his sentence, raising the following issues:

1) whether the evidence was sufficient to support his conviction; and

2) whether the trial court erred when it ordered his sentence to run consecutively to other sentences that were previously imposed in another case.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

Officer William Stokes of the Metropolitan Nashville Police Department testified that at approximately 11:30 p.m. on February 12, 1996, he received a call to investigate a body that was found in the Hadley Park area of Nashville. When Stokes arrived, he observed the body of a white male that had a bullet wound on the left side of the neck. Stokes also observed a trail of blood between the body and a pavilion in the park that was approximately 100 yards away. When Stokes approached the pavilion, he observed a shell casing and a pool of blood. Officer

-2-

Wayne Hughes of the Metro Police Department testified that the shell casing was from a .380 automatic.

Yakuo Murphy testified that sometime during or after February of 1996, he had a conversation with Defendant about the murder that occurred in Hadley Park. Murphy testified that Defendant stated that he had gone to Hadley Park and seen a white man sitting on a park bench. Defendant then stated that the man said that he was looking for a prostitute and Defendant asked him how much money he had. Defendant stated that when the man said that he did not have any money, Defendant asked the man, "Have you ever danced with the Devil?" Defendant also stated that at this point, he pulled out a .380 and shot the man in the head. Defendant further stated that the man started to run and Defendant "shot him up."

Antonio Cartwright testified that he was with Defendant and Gdongalay Berry on February 12, 1996. After Defendant parted company with Cartwright and Berry at approximately 10:30 to 11:00 p.m., Cartwright went to a residence about two or three blocks from Hadley Park. Approximately one hour later, Defendant came to the residence and told Cartwright that he had shot a white man in Hadley Park. Defendant also stated that he shot the man in the head because he "wouldn't give it up." In addition, Defendant stated that when the man started to run, Defendant attempted to shoot him again, but the gun jammed and would not fire. Cartwright also testified that earlier that evening, he saw Berry give a .380 automatic to Defendant.

Dr. Bruce Levy testified that the autopsy report in this case indicated that the fatal gunshot had been fired from a distance of only two to three feet from the victim.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence was insufficient to support his conviction. We disagree.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Defendant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). Moreover, this Court may not substitute its own inferences "for those drawn by the

trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Finally, Rule 13(e) of the Tennessee Rules of Appellate Procedure provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt."

In order to establish that Defendant had committed second degree murder, the State had to prove beyond a reasonable doubt that Defendant knowingly killed the victim. See Tenn. Code Ann. § 39-13-210(a)(1) (1997).

We conclude that when the evidence in this case is viewed in the light most favorable to the State, as it must be, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Defendant committed the offense of second degree murder. The evidence in this case established that the victim was shot in the neck from a distance of two to three feet on February 12, 1996. The evidence also established that a .380 shell casing was discovered in the area of Hadley Park where the victim was shot. In addition, Cartwright testified that he saw Defendant with a .380 automatic on February 12, 1996. Cartwright also testified that on that same date, Defendant stated that he had shot a white man in the head because the man "wouldn't give it up" and he tried to shoot the man again while the man ran away, but the gun would not fire. Similarly, Murphy testified that Defendant stated that he had shot a white man in Hadley Park after the man indicated that he did not have any money.

Defendant essentially argues that the evidence in this case was insufficient because the only evidence that connected him to the killing in Hadley Park came

from Cartwright and Murphy and these two witnesses were simply not credible. However, "[t]he credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact." State v. Cribbs, 967 S.W.2d 773, 793 (Tenn. 1998). The jury obviously believed the testimony of Cartwright and Murphy.

In this case, Defendant essentially asks us to reconsider the evidence and substitute a verdict of not guilty in place of the verdict found by the jury. That is not our function. Instead, we conclude that a rational jury could have found beyond a reasonable doubt that Defendant had committed the offense of second degree murder. See Tenn. R. App. P. 13(e). Defendant is not entitled to relief on this issue.

### III. CONSECUTIVE SENTENCING

Defendant contends that the trial court erred when it ordered the sentence in this case to run consecutively to sentences previously imposed in another case. We disagree.

Consecutive sentencing is governed by Tennessee Code Annotated section 40-35-115. The trial court has the discretion to order consecutive sentencing if it finds that one or more of the required statutory criteria exist. State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Further, the court is required to determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

The record indicates that before he was convicted and sentenced for the offense in this case, Defendant was convicted of felony murder and especially aggravated robbery in another case. In addition, Defendant received consecutive sentences of life and twenty years for his two convictions in the other case.

Initially, Defendant contends that consecutive sentencing is improper because the offenses in the previous case were committed after he committed the offense in this case. Specifically, Defendant argues that a trial court does not have the authority to order a sentence to run consecutively to a sentence for an offense that was committed later in time. This Court has previously rejected this argument. In State v. Blanton, 926 S.W.2d 953, 961 (Tenn. Crim. App. 1996), this Court held that for purposes of consecutive sentencing, it is irrelevant that the conviction and sentencing for the prior offense occurred after the conviction and sentencing for the later offense. "In other words, it is immaterial whether sentence one is consecutive to sentence two, or vice versa, as the sentences are consecutive in either case." Id. Thus, the trial court was not prohibited from ordering the sentence in this case to run consecutively to the sentences previously imposed, even though those sentences were for offenses committed after the offense in this case.

Defendant also contends that consecutive sentencing is improper because the requirements of section 40-35-115 and Wilkerson have not been satisfied.

In determining that the sentence in this case should run consecutively to the sentences in the previous case, the trial court found that Defendant was a dangerous offender whose behavior indicates little or no regard for human life and who has no hesitation in committing a crime in which the risk to human life is high.

See Tenn. Code Ann. § 40-35-115(4) (1997). We agree. Indeed, the evidence indicates that after Defendant approached the victim and the victim stated that he did not have any money, Defendant taunted the victim by asking "Have you ever danced with the Devil?" and the Defendant then shot the victim in the neck at close range. In addition, the evidence indicates that while the victim was running away from the park, Defendant attempted to shoot him again and was prevented from doing so only by the fact that the gun jammed and would not fire.

The trial court made no express finding that the <u>Wilkerson</u> test was satisfied in this case, however we conclude in our de novo review that it was. First, consecutive sentencing is reasonably related to the severity of the offenses. Indeed, Defendant was convicted of three serious violent felonies. In addition, Defendant committed the offense in this case by taunting and then shooting the victim at close range for no apparent reason at all. Second, consecutive sentencing will serve to protect the public from future criminal conduct by Defendant. Defendant clearly poses a great risk to the safety of the public. Although the record does not indicate the exact date, Defendant apparently committed the felony murder and especially aggravated robbery only a short time after he committed the brutal and senseless killing in this case. Finally, consecutive sentencing is clearly congruent with general principles of sentencing. Defendant is not entitled to relief on this issue.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
THOMAS T. WOODALL, Judge

CONCUR:


_____
JERRY L. SMITH, Judge


_____
NORMA McGEE OGLE, Judge